**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| FILTREX S.r.l.,<br><br>Plaintiff,<br><br>v.<br><br>MOTT CORPORATION and ASCO FILTRI S.p.A.,<br><br>Defendants. | C.A. No. [___________]<br>JURY TRIAL DEMANDED |

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Filtrex S.r.l. ("Filtrex" or "Plaintiff"), by and through its attorneys, hereby alleges as follows for its Complaint against Defendants Mott Corporation ("Mott") and Asco Filtri S.p.A. ("Asco") (collectively, "Defendants"):

## NATURE OF THE ACTION

1. This is an action under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq., the Connecticut Uniform Trade Secrets Act ("CUTSA"), Conn. Gen. Stat. § 35-50, et seq., the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110, et seq., the Federal Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 et seq., and the common laws of Connecticut, arising from Defendants' theft, disclosure, and commercial exploitation of Filtrex's confidential trade secrets relating to its market-leading self-cleaning filtration technology, and intentional interference with Filtrex's business relations through unfair means.

2. For decades, Filtrex has invested substantial resources in developing proprietary self-cleaning filtration technology for the oil & gas, refining, and petrochemical industries,

culminating in its flagship "ACR," "ACB" and "ACW" filters—products recognized by filtration industry participants and multinational oil & gas companies alike as the recommended, best-in-class solution for critical fluid filtration applications.

3. Defendants Mott and Asco also operate in the filtration industry. Beginning in 2011, Defendants engaged in an elaborate scheme to unlawfully acquire Filtrex's confidential technical and commercial trade secrets—including the ACR filter's technical specifications, Filtrex's customer lists and installation details, and Filtrex's confidential pricing submitted in customer bids—through the industrial espionage of Filtrex's then-employees and agents, the scope of which has only recently become known to Filtrex through a series of investigations and criminal actions by the Italian authorities. As early as December 2011, Mott knowingly received Filtrex's misappropriated trade secret information from Asco and attempted to conceal that exchange under [redacted] Mott and Asco thereafter colluded to use Filtrex's trade secrets to market and sell a knock-off filter, which Asco designed and manufactured using Filtrex's misappropriated trade secrets, called the "RVM" filter.

4. In 2022, Mott acquired Asco, whose competitive position had been built in substantial part on the trade secrets misappropriated from Filtrex. Following the acquisition, Mott installed its own executives on Asco's board and integrated Asco's operations, personnel, and information systems into Mott's corporate infrastructure. Mott and Asco—now wholly owned by Mott—continued to manufacture and sell the copycat RVM filters under co-branded Mott/Asco nameplates. Moreover, Mott doubled down on its misappropriation of Filtrex's trade secrets and engaged in an unlawful scheme to displace Filtrex from competitive bids and relationships with Filtrex's existing customers and agents.

5. In 2023, Mott and Asco's unlawful scheme started coming to light when Filtrex received a report on the examination of the laptops of two Asco whistleblowers. The discovery led

to the Italian authorities' criminal investigation and prosecution of Asco employees, including Asco's former CEO and president. As part of the investigation, Italian authorities set up wiretaps on Asco employees' and former Filtrex employees' phones, together with in-car audio surveillance, and conducted forensic recovery of text and WhatsApp chat history, which confirmed Asco's misappropriation of Filtrex trade secrets and revealed Mott's participation in the scheme.

6. The investigation also revealed systematic and widespread spoliation of evidence which resulted in the unrecoverable deletion of more than 135,000 chat messages from the participants' devices.

7. Filtrex brings this action to recover the damages it has suffered as a result of Defendants' misappropriation and unfair competition, to disgorge Defendants' unjust enrichment, and to enjoin Defendants' continuing misuse of Filtrex's trade secrets.

## PARTIES

8. Plaintiff Filtrex S.r.l. is a company organized under the laws of Italy, with its principal place of business at Via Rubattino 94/B, Milan, Italy. Filtrex has manufactured filtration systems for the oil & gas industries since 1977.

9. Defendant Mott Corporation is a corporation organized under the laws of the State of Connecticut, with its principal place of business at 75 Spring Lane, Farmington, Connecticut 06032. Mott is a multinational manufacturer and marketer of filtration products for the process industries, including oil & gas, refining, and petrochemicals.

10. Defendant Asco Filtri S.p.A. is a corporation organized under the laws of Italy, with its principal place of business in Binasco, Italy. Asco is a manufacturer and marketer of filtration systems, and since 2022 has been wholly owned by Mott.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the DTSA, 18 U.S.C. § 1836, which provides a private right of action in federal court for trade secret misappropriation related to a product or service used in, or intended for use in, interstate or foreign commerce, and RICO, 18 U.S.C. § 1961, which provides a private civil right of action in federal court.

12. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal DTSA and RICO claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

13. This Court has personal jurisdiction over Defendant Mott because Mott is a Connecticut corporation with its principal place of business in Farmington, Connecticut, and is therefore subject to general personal jurisdiction in this District. Moreover, Mott has sufficient minimum contacts with this District because of substantial business conducted within the State of Connecticut. For example, on information and belief, Mott received Filtrex's stolen materials at its Farmington, Connecticut headquarters; purchased RVM internal filter components embodying Filtrex's misappropriated trade secrets under purchase orders invoiced to Farmington, Connecticut; and directed from Connecticut a campaign to displace Filtrex installations from Filtrex's customers' refineries, including [redacted].

14. This Court has personal jurisdiction over Defendant Asco because, among other things: (a) Asco knowingly transacted business with, and transmitted Filtrex's misappropriated trade secrets to Mott, a Connecticut-based recipient; (b) Asco prepared and transmitted to Mott, in Connecticut, a proposed non-disclosure agreement dated December 12, 2011 concerning stolen

Filtrex materials, which purported to be governed by Connecticut law and select the jurisdiction and venue of the Superior Court of Hartford County and/or the United States District Court for the District of Connecticut; (c) since 2022, Asco has been wholly owned, controlled, and managed by Mott from Mott's Connecticut headquarters—Asco has stated that it is a company "subject to the direction and coordination of Mott Corporation" and bearing the legend "a Mott company"—such that Asco's conduct is attributable to activity directed at and coordinated from Connecticut; and (d) Asco has purposefully directed commercial transactions into this District, including by selling the copycat RVM filter kits to Mott and coordinating with Mott to market and sell the copycat RVM filter kits to others.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Mott resides in this District, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. The center of gravity of Defendants' United States conduct lies in this District: Mott received Filtrex's misappropriated materials at its Farmington headquarters under a proposed non-disclosure agreement selecting Connecticut law and Connecticut fora; the campaign to displace Filtrex from United States refineries was directed from Connecticut; Asco has sold the copycat RVM filter to Mott in this District; Asco and Mott have coordinated activities to market and sell the copycat RVM filter kits to others from this District; and documents evidencing Defendants' unlawful conduct are in Mott's possession in this District.

## FACTUAL BACKGROUND

### A. Filtrex's Trade Secrets and Filters

16. Filtrex was founded in 1977 by its president, Luigi Riolo, and incorporated in its present form in 1983. Since its founding, Filtrex has practiced in the design, production, and distribution of high-specialization filtration systems for the naval, oil & gas, and petrochemical sectors.

17. Filtrex spent years developing, testing, and refining self-cleaning filtration technology capable of retaining impurities as small as thousandths of a millimeter. That research and development effort culminated, in the early 2000s, in Filtrex's "ACR" filter, an automatic self-cleaning back-washing filter designed for oil & gas, refinery, and offshore applications. In addition, Filtrex developed and markets the ACW, a wedge-wire filter for the oil & gas sector that is offered where a more advanced ACR filter would not be needed, but also contains proprietary technology belonging to Filtrex. Filtrex also developed and markets the ACB filter for marine ballast water applications, which shares substantially the same proprietary operating principles as the ACR filter.



Photo of the ACR Filter

18. Filtrex's ACR, ACW, and ACB filters, and the confidential technical and commercial information associated with them—including the filters' normalization tables, filtration and backwash flow-rate parameters, dimensioning and sizing data, bench-test results, construction drawings, commercial strategies and pricing structure, and customer/site reference lists—constitute trade secrets of Filtrex. This information derives independent economic value

from not being generally known to, or readily ascertainable by, Filtrex's competitors, and Filtrex's competitive position as the recognized market leader in this filtration segment depends on this information remaining confidential.

19. Filtrex made a business decision not to seek patent protection over its ACR, ACW and ACB filter technology, because patenting would have required public disclosure of technical and operating data and because patent protection would have been time-limited. Filtrex instead chose to protect its ACR, ACW and ACB filter technology as trade secrets.

20. Filtrex has at relevant times taken reasonable measures to protect the secrecy of this information, including: restricting server access through individualized, role-based credentials so that employees have access only to information relevant to their function; tracking and logging server access and flagging errors or breaches; installing firewall protections against external intrusion; enabling USB ports in read-only mode; restricting peer-to-peer and personal webmail access on company systems; maintaining information back-up procedures designed to prevent data exfiltration; physically segregating work environments and requiring authorization for access between departments; storing the most sensitive documentation in a safe; maintaining a dedicated, access-controlled department for its most sensitive experimentation and testing; and entering into post-employment non-competition covenants with former employees.

21. A technical expert appointed by the public prosecutor in the Italian criminal proceedings against Asco and its officers confirmed that Filtrex's ACR- and ACB-related technical information, data, specifications, and executive documents are not obtainable on Filtrex's website, in trade journals, or in scientific or academic publications, and concluded that Filtrex's security measures protecting this information were reasonable.

**B. Asco's Misappropriation of Filtrex's Trade Secrets Through Filtrex Insiders**

22. Asco is an Italian filtration company founded in 2002 by Ennio Michelini and Massimo Mascheroni. Michelini served as Asco's president and legal representative from December 19, 2007 until May 2, 2022; Mascheroni has served as Asco's general manager since the company's incorporation. On information and belief, Asco has never had research-and-development laboratories, test benches or product-testing facilities of its own and, before the events described below, had never designed a micron-grade automatic self-cleaning filter.

23. On information and belief, by no later than 2011, Asco continuously and unlawfully obtained Filtrex proprietary and trade secret information through at least three of Filtrex's then-current employees—Fulvio Italo Menini, Patrizia Anselmi, and Francesco Sabatini.

24. Fulvio Italo Menini was employed by Filtrex from July 8, 1996 to October 31, 2013. On July 8, 1996, Menini executed a non-competition covenant with Filtrex. Under the terms of the covenant, [redacted].

25. On information and belief, Menini served as Asco's and Mott's principal conduit for the acquisition of Filtrex's confidential and trade secret technical and commercial information, in breach of the non-competition covenant he entered into with Filtrex. From May 2, 2022 to January 28, 2025, Menini served as Asco's chief executive officer, and from September 2024 as chairman of its board of directors, while also serving as President of Mott's global Process Systems Business Unit.

26. Patrizia Anselmi was employed by Filtrex from January 4, 1988 to July 31, 2022. Anselmi consolidated sales, tender and pricing data from all of Filtrex's commercial departments

for weekly management reports submitted to Filtrex's executives, and therefore had access to Filtrex's entire commercial data set, including prices, discounts and supply costs. On information and belief, Anselmi—who began living with Menini in or about 2016 unbeknownst to Filtrex's executives—supplied Menini with Filtrex confidential commercial and strategic trade secret information without the knowledge of Filtrex's management.

27. Francesco Sabatini was employed by Filtrex from May 19, 1998 to July 30, 2018. In his role as workshop manager, Sabatini had access to Filtrex's technical and commercial information relating to, at least, the ACR filter. On information and belief, Sabatini supplied Menini with detailed trade secret technical information concerning the construction of the ACR filter and other trade secret information without the knowledge of Filtrex's management.

28. On information and belief, Asco's misappropriation of Filtrex's trade secret technical and commercial information began no later than December 2011. On information and belief and as described in more detail below, in December 2011, Asco unlawfully obtained and transmitted to Mott confidential Filtrex materials, including Filtrex's confidential ACR filter customer and site reference list.

29. On information and belief, Menini transmitted Filtrex's trade secret technical and commercial information that he obtained from at least Anselmi, Sabatini, and his own prior employment at Filtrex, to Asco's senior management, including Mascheroni and Michelini, on a recurring basis beginning no later than 2011.

30. For example, on information and belief on or about July 15, 2015, Michelini circulated an email within Asco documenting a phone call with Menini during which Menini provided him with confidential Filtrex trade secret information.

31. On information and belief, on or about May 19 and May 30, 2017, Michelini requested and received from Menini trade secret pricing information of Filtrex.

32. On information and belief, in January 2018, Mascheroni wrote to Asco's then-area commercial manager Paolo Barbieri, suggesting that Asco should produce its own version of Filtrex's ACR filter.

33. On information and belief, on or about February 21, 2018, Menini requested from Francesco Sabatini, Filtrex's then-workshop manager, [redacted] On information and belief, on or about February 25, 2018, Menini obtained a file containing Filtrex ACR trade secret sizing data from Sabatini. Menini then forwarded the file to Mascheroni and warned Mascheroni to [redacted] Mascheroni replied that he would [redacted]

34. On information and belief, Asco used the misappropriated Filtrex trade secrets to design, manufacture, and sell its copycat version of ACR filter—the "RVM" filter. On information and belief, in an internal communication dated March 19, 2018, Mascheroni described Asco's RVM filter as a [redacted]

35. Paolo Barbieri, Asco's then-area commercial manager and its principal contact for relations with Mott from 2013 to 2022, stated during an interview with the Italian financial police that [redacted]

36. The prosecutor-appointed technical expert in the Italian criminal proceedings concluded that Asco's RVM filter [redacted]

[redacted]

37. On information and belief, Asco began offering the RVM filter for sale no later than March 2018 and made its first known RVM sale in July 2019. Between 2019 and 2023, Asco sold [redacted]

38. On information and belief, Asco thus moved from first proposing its own version of the ACR filter in January 2018 to offering for sale the copycat RVM by March 2018—a span of roughly two months. On information and belief, for a company with no laboratories, no test benches and no experimental capability of its own, that timeline was achievable only by wholesale copying of Filtrex's trade secret information including construction standards, sizing data and drawings, and not through independent development; Filtrex's own ACR and ACW ranges were, by contrast, developed over decades of research and full-scale test-bench experimentation.

39. On information and belief, Defendants' misappropriation extended to Filtrex's ACW filter range. On or about February 17, 2020, Asco's general manager Mascheroni circulated within Asco Filtrex's construction standards for the horizontal version of the ACW filter, including the shell diameter, number and dimensions of the wedge-wire filter candles, backwash liquid consumption, in-service history of filter-candle failures, and the remedies Filtrex had adopted—information not obtainable from any Filtrex catalogue or other public source nor information that is readily ascertainable by proper means.

40. On information and belief, in or about April 2020, Mascheroni confirmed in writing that he had obtained Filtrex's trade secret ACW construction drawings and budget prices. On information and belief, Asco used that misappropriated ACW construction standards and pricing

information to develop a horizontal version of its "MBW" filter and to position itself against Filtrex in competitive bids.

**C. Asco's Disclosure of Filtrex Trade Secret Information to Mott**

41. Mott and Asco maintained a close commercial relationship for well over a decade before Mott's eventual acquisition of Asco in 2022. That relationship included sharing and exploitation of stolen Filtrex trade secrets, joint technical efforts to develop, market, and sell the copycat RVM filters using Filtrex trade secrets, and other coordinated competitive strategies specifically directed at displacing Filtrex from key customers in the United States and abroad.

42. On information and belief, on or about December 9, 2011, Mott employee Kevin Gagen communicated to Asco that [redacted]

43. In response, on December 15, 2011, Ennio Michelini, Asco's then-president, emailed Mott and stated that [redacted]

44. On information and belief, on or about December 12, 2011, Asco prepared and transmitted to Mott a [redacted] The agreement proposed by Asco is governed by the laws of the State of Connecticut with venue specified in Superior Court

of Hartford County, Connecticut and/or the United States District Court for the District of Connecticut.

45. On information and belief, on or about December 15, 2011, Michelini transmitted misappropriated Filtrex trade secret materials to Mott's then-Vice President, Thomas Fahey. The transmitted materials included Filtrex's confidential ACR filter customer and site reference list (the "ACR Reference List"), which includes trade secret information regarding one of Filtrex's key accounts—[redacted]—among other things.

46. On information and belief, at the time Mott received Filtrex's confidential and trade secret documents in December 2011, Mott knew or should have known that Asco obtained the transmitted Filtrex materials through improper means.

47. On information and belief, Filtrex's confidential and trade secret ACR Reference List and related technical materials continued to circulate within and between Asco and Mott for years thereafter, including further internal transmissions within Asco in June and October 2014, and further transmissions of Filtrex's ACR Reference List in or about August 2023 by Menini to Fabrizio Carta, who used a Mott corporate e-mail address FCarta@mottcorp.com and was identified in Asco's and Mott's transaction documents as acting on behalf of Mott Corporation in Farmington, Connecticut. On information and belief, Mott and Asco used Filtrex's ACR Reference List to identify and analyze Filtrex's installed customer base and to target Filtrex's customers for copycat RVM filter retrofits.

48. On information and belief, Mott collaborated closely with Asco in marketing and selling the copycat RVM filters. Moreover, Mott and Asco also collaborated in leveraging misappropriated Filtrex trade secrets to poach Filtrex customers and to exclude Filtrex from competitive bids.

49. On information and belief, in late November 2018, and again in June 2019, Asco's Mascheroni corresponded with Mott's Eric Tsui regarding a coordinated Asco-Mott strategy to prevent Filtrex from being approved as a vendor for slurry-oil filtration at [redacted] with Mascheroni offering to [redacted]

50. On information and belief, on or about January 31, 2020, Asco's Mascheroni emailed Mott's Eric Tsui, copying Asco's president Michelini, to provide Mott with detailed non-public information regarding the operating performance of Filtrex's slurry-oil installations at [redacted].

**D. Mott's Acquisition and Integration of Asco**

51. Mott acquired Asco in January 2022. Following the acquisition, Mott integrated Asco's management, personnel, and operations into Mott's own corporate structure.

52. On information and belief, by May 2, 2022, Mott's CEO, Boris Levin, and Mott's CFO, Tim Ludlow, had taken seats on Asco's board of directors. On information and belief, Asco's board delegated to Levin single-signature authority over Asco contracts up to €3,000,000 and over Asco's bank accounts up to €1,500,000. Levin served as Chairman of Asco's board from December 6, 2022 to October 16, 2024, and again since February 4, 2025.

53. On information and belief, Fulvio Menini was appointed as Asco's CEO on or around May 2, 2022, and served in that capacity until January 2025. On information and belief, beginning in or around April 2022 and as recently as March 2026, Mott publicly identified Menini as Managing Director for Mott Europe on its corporate website, and Menini held himself out to customers and third parties as President of Mott's global Process Systems Business Unit, using the

Mott corporate e-mail address fmenini@mottcorp.com, receiving equity grants issued by Mott, and attending Mott's board meetings in Farmington, Connecticut.



FULVIO MENINI

MANAGING DIRECTOR, ASCO FILTRI AND MOTT EUROPE

Mott, Our Culture & People (archived March 15, 2026)
https://www.mottcorp.com/about/our-culture-people/

54. On information and belief, following Mott's acquisition of Asco, Asco's key management decisions, capital expenditures, and personnel decisions were approved by or coordinated with Mott's board and executives. On information and belief, Mott is required to approve Asco's decisions regarding executive compensation, industrial investments, long-term strategy and key hirings.

55. On information and belief, following the acquisition, Mott migrated Asco's e-mail system onto Mott's own Office 365 system. As a result, Mott controls Asco's IT infrastructure and Asco employees use email addresses bearing Mott's "mottcorp.com" domain.

56. On information and belief, since the acquisition of Asco, Mott has presented itself to customers as the bidding vendor for RVM filter packages, including during the tendering for 2023 [redacted] Project discussed below.

57. On information and belief, since the acquisition of Asco, equipment manufactured by Asco, including the copycat RVM filters, has been sold and delivered by Mott bearing Mott internal nameplates and serial numbers, together with Mott estimates, sales-orders and project designations.

58. At all relevant times, Mott and Asco have acted in concert, pursuant to a common scheme and in knowing furtherance of each other's conduct, in the acquisition, disclosure, use and commercial exploitation of Filtrex's trade secrets and in the unfair competitive practices alleged herein. In addition, and in the alternative, since at least January 2022 Asco has acted as Mott's agent and alter ego: Mott wholly owns Asco, staffs its board of directors, holds single-signature authority over Asco's contracts and bank accounts, controls Asco's information-technology infrastructure, approves Asco's key management decisions, and holds Asco out as "a Mott company" subject to Mott's direction and coordination. Each Defendant is accordingly responsible, jointly and severally, for the conduct of the other in furtherance of the common scheme.

### E. Mott and Asco's Continuing Misappropriation and Exploitation of Filtrex Trade Secrets Following the Acquisition

59. Following its acquisition of Asco, Mott doubled down on its unlawful misappropriation and exploitation of Filtrex's trade secrets to undercut Filtrex in the market.

60. On information and belief, following its acquisition of Asco, Mott continued selling and offering to sell the copycat RVM filters, by itself or through Asco, within and outside of the United States.

61. On information and belief, on or around August 23, 2023, Menini transmitted to Fabrizio Carta, at his Mott corporate e-mail address, a set of Filtrex bid materials for Filtrex project No. 56329 comprising general arrangement drawings, piping and instrumentation diagrams, a priced commercial offer and unpriced technical offer, together with a document titled "Filtrex Reference List – ACR Filters." The transmitted materials contain confidential Filtrex trade secret commercial information relating to Filtrex's ACR filter. On information and belief, Mott used such Filtrex information to investigate Filtrex's installed customer base and aftermarket, and to support Asco/Mott's own RVM filter reference credentials.

62. On information and belief, in or around 2022 to 2023, Mott engaged in an unlawful attempt to poach [redacted] a long-time Filtrex customer in the United States. On information and belief, in June 2022, Menini, assisted by Mott's Fabrizio Carta, met [redacted] representatives in [redacted] and promoted Mott's/Asco's alternative filtration solutions. On information and belief, from February 4, 2023, Mott's Director of Field Engineering, Patrick Hill, joined an unlawful scheme to interfere with and sever Filtrex's ongoing supply and maintenance relationship with [redacted] by contacting [redacted] responsible manager and preparing a reference list containing Filtrex's service intervals and details. On information and belief, on or around June 5, 2023, Menini pressed Hill to accelerate the replacement of Filtrex units at [redacted] using Mott/Asco filter elements replaceable on site so that [redacted] would no longer ship its filter elements to Filtrex for refurbishment and replacement.

63. On information and belief, Mott and Asco used misappropriated Filtrex trade secrets, including information contained in the ACR Reference List Mott received in 2011, in its unlawful scheme to poach [redacted].

64. On information and belief, Mott and Asco disparaged Filtrex to [redacted] and other customers by conveying non-public and misleading accounts of Filtrex's installations, with the stated purpose that Filtrex [redacted]

65. In 2023, Filtrex and Mott competed in bidding for a project relating to a refinery in the Republic of Korea (the "[redacted] Project"). On information and belief, Mott, by itself and through Asco, engaged in an unlawful attempt to displace Filtrex from the bidding. Mott was ultimately successful.

66. On information and belief, Mott and/or Asco submitted bids for the [redacted] Project using the copycat RVM filters.

67. On information and belief, by September 2023, Menini, then Asco's chief executive officer and the president of Mott's global Process Systems Business Unit, had misappropriated Filtrex trade secret information, such as Filtrex's bid price, from a Filtrex salesperson.

68. On information and belief, on or around June 6, 2023, Menini instructed Andrea Grisoni, an Asco consultant, to approach [redacted], president of [redacted] and Filtrex's exclusive agent for Korea since [redacted].

69. [redacted] had a written agency agreement with Filtrex, under which [redacted] On information and belief, Menini instructed Grisoni to approach [redacted] for the purpose of gaining Filtrex's confidential pricing information and manipulating the bidding price. [redacted]

[redacted] In so doing, the Defendants knowingly induced [redacted] to breach the written agency agreement [redacted] had entered with Filtrex.

70. On information and belief, on September 25, 2023, [redacted] reported to Menini that [redacted]

71. On information and belief, as a result of Mott's unlawful misappropriation of Filtrex's confidential and trade secret pricing information, Filtrex lost the bid for the [redacted] Project to Mott/Asco's offering.

**F. Filtrex's Discovery of the Misappropriation, the Resulting Criminal Investigation, and Spoliation of Incriminating Evidence**

72. In 2023, two former Asco employees, Paolo Barbieri and Emanuela Muratore, who were then providing independent consulting services to Filtrex, first mentioned to Luigi Riolo, the president of Filtrex, that Asco may have had access to certain of Filtrex's commercial, technical, and industrial information.

73. Pursuant to Italian criminal law, Barbieri and Muratore consented to a forensic examination of their devices, and the results were reported to Filtrex on or about September 25, 2023. The examination revealed that both individuals' computers contained confidential Filtrex technical and commercial documents obtained through their employment at Asco, and that such documents had been exchanged extensively among Mott and Asco personnel.

74. On December 21, 2023, Filtrex filed a criminal complaint in Italy against Fulvio Menini, Ennio Michelini, and Asco based on the information it had gathered. The ensuing criminal investigation by the Economic-Financial Police Unit of Milan involved forensic device analysis, telephone and environmental wiretaps, banking analysis, and an investigation conducted by a prosecutor-appointed technical expert. Evidence uncovered by the investigation revealed the misappropriation described above, including Mott's knowing receipt of Filtrex's trade secret information as early as 2011.

75. On information and belief, following the discovery of the investigation in 2024, Mott and Asco personnel, including Fulvio Menini, directed the deletion of e-mails and other electronically stored information relevant to Filtrex's claims stored on Mott's information-technology infrastructure, onto which Asco's e-mail systems had been migrated. On information and belief, Menini instructed a subordinate to coordinate with a Mott IT contact in Farmington, Connecticut to [redacted] using non-traceable communication channels to avoid creating a written record of the instruction. On information and belief, when Menini asked how the instruction had been conveyed, the subordinate answered that [redacted]

76. Forensic examination of the seized devices established that 58,731 of 163,302 messages had been deleted from Menini's device and 76,670 of 243,332 from Anselmi's device—totaling more than 135,000 communications, none of which could be recovered.

**G. Defendants' Fraudulent Concealment of Their Misappropriation**

77. Filtrex neither knew nor, in the exercise of reasonable diligence, could have known of Defendants' misappropriation until at least September 25, 2023. The mention first made to Filtrex's president by Barbieri and Muratore was general and non-specific: it identified no specific

document or communication, or any involvement by Mott. Filtrex acted immediately and diligently: it obtained consent to a forensic examination of Barbieri's and Muratore's devices, received the results on or about September 25, 2023, and filed a criminal complaint on December 21, 2023. The misappropriated trade secrets at issue concern the internal design, manufacturing and commercial information of the ACR, ACW, and ACB filters and could not have been ascertained from public information, including from inspection or observation of the RVM filter as marketed.

78. Moreover, the initial discussion with Barbieri and Muratore was relevant only to Asco's conduct. Mott's role emerged only later from the ensuing forensic examination and criminal investigation.

79. Defendants actively and fraudulently concealed their misappropriation. Among other things, Defendants, acting through their officers and executives, concealed their December 2011 exchange of stolen Filtrex materials [redacted]; instructed one another to keep only paper copies and to [redacted]; routed sensitive instructions through non-traceable channels, expressly so as not to [redacted]; and, upon learning of the investigation, directed spoliation that irrecoverably destroyed more than 135,000 communications.

**FIRST CAUSE OF ACTION**

(Misappropriation of Trade Secrets Under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., Including 18 U.S.C. § 1837 — Against all Defendants)

80. Filtrex re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

81. Filtrex owns and possesses trade secrets, as defined in 18 U.S.C. § 1839(3), consisting of, among other things, the technical specifications, construction drawings,

dimensioning and normalization tables, filtration and backwash flow-rate data, bench-test results, and customer and site reference information relating to its ACR, ACW and ACB filters.

82. Filtrex's trade secrets derive independent economic value from not being generally known to, or readily ascertainable through proper means by, competitors and others who could obtain economic value from their disclosure or use.

83. Filtrex's trade secrets relate to products and services used in, and intended for use in, interstate and foreign commerce, including the sale and marketing of ACR, ACW and ACB filters and related filtration products to customers throughout the United States and internationally.

84. Filtrex has at all relevant times taken reasonable measures to keep this information secret, as alleged above.

85. Mott misappropriated Filtrex's trade secrets, within the meaning of 18 U.S.C. § 1839(5), by acquiring at least Filtrex's confidential ACR technical and customer information from Asco beginning no later than December 2011, and by thereafter using and benefiting from that information—and from Filtrex's trade secrets embodied in the copycat RVM filter—including through Mott's participation in the design, marketing, and sale of the RVM filter, use of Filtrex's trade secrets in competitive bids, and the use of Filtrex's trade secrets in attempting to poach Filtrex customers.

86. At the time it acquired, used, and disclosed Filtrex's trade secrets, Mott knew or had reason to know that the information had been derived from or through former Filtrex employees and agents—each of whom owed Filtrex a duty to maintain the confidentiality of, and not to use or disclose, Filtrex's trade secrets—and that the information had been acquired through improper means.

87. Asco misappropriated Filtrex's trade secrets, within the meaning of 18 U.S.C. § 1839(5), by acquiring and disclosing without express or implied consent by Filtrex, at least Filtrex's

confidential ACR technical and customer information beginning no later than December 2011, and by thereafter using and benefiting from that information, including through its design, marketing, and sales of the copycat RVM filter, use of Filtrex's trade secrets in competitive bids, and the use of Filtrex's trade secrets in attempting to poach Filtrex customers.

88. Defendants' misappropriation and unauthorized disclosure of Filtrex trade secrets has occurred in this District, at least through Asco's disclosure of Filtrex trade secrets to Mott, a Connecticut company, and through Defendants' offers for sale and sales of the RVM filter in this District.

89. Asco has acted in furtherance of its misappropriation of Filtrex's trade secrets in the United States, at least by marketing, offering to sell, and selling the RVM filter in the United States, and by participating, together with Mott, in the bid for the [redacted] Project, in which the booking location for the resulting order was to be Mott in the United States.

90. At the time it acquired, used, and disclosed Filtrex's trade secrets, Asco knew or had reason to know that the information had been derived from or through former Filtrex employees and agents—each of whom owed Filtrex a duty to maintain the confidentiality of, and not to use or disclose, Filtrex's trade secrets—and that the information had been acquired through improper means.

91. Defendants' misappropriation has been at all times willful and malicious.

92. Defendants acted in concert in the misappropriation alleged herein, and each Defendant is jointly and severally liable for the damages caused by that misappropriation.

93. As a direct and proximate result of Defendants' misappropriation, Filtrex has suffered, and continues to suffer, monetary damages in an amount to be determined at trial.

94. Filtrex is entitled to recover damages for its actual losses caused by Defendants' misappropriation and for any unjust enrichment caused by Defendants' misappropriation that is not addressed in computing damages for actual loss.

95. Filtrex is entitled to a permanent injunction enjoining Defendants from any further actual or threatened misappropriation of Filtrex's trade secrets, including the continued purchase, marketing, sale, or use of the RVM filter and any product embodying Filtrex's misappropriated trade secrets or, in the exceptional circumstances that render an injunction inequitable, a reasonable royalty for Defendants' unauthorized disclosure and use of Filtrex's trade secrets for the period of time for which such use could have been prohibited.

## SECOND CAUSE OF ACTION

(Violation of Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50, et seq. — Against all Defendants)

96. Filtrex re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

97. Filtrex owns and possesses trade secrets, as defined in Conn. Gen. Stat. § 35-51(d), consisting of, among other things, the technical specifications, construction drawings, dimensioning and normalization tables, filtration and backwash flow-rate data, bench-test results, and customer and site reference information relating to its ACR, ACB and ACW filters.

98. Filtrex's trade secrets derive independent economic value from not being generally known to, or readily ascertainable through proper means by, competitors and others who could obtain economic value from their disclosure or use.

99. Filtrex has at all relevant times taken reasonable measures to keep this information secret, as alleged above.

100. Mott misappropriated Filtrex's trade secrets, within the meaning of Conn. Gen. Stat. § 35-51(b), by acquiring at least Filtrex's confidential ACR technical and customer information from Asco beginning no later than December 2011, and by thereafter using and benefiting from that information—and from Filtrex's trade secrets embodied in the copycat RVM filter—including through Mott's participation in the design, marketing, and sales of the RVM filter, the use of Filtrex's trade secrets in competitive bids, and the use of Filtrex's trade secrets in attempting to poach Filtrex customers.

101. At the time it acquired, used, and disclosed Filtrex's trade secrets, Mott knew or had reason to know that the information had been derived from or through former Filtrex employees and agents—each of whom owed Filtrex a duty to maintain the confidentiality of, and not to use or disclose, Filtrex's trade secrets—and that the information had been acquired through improper means.

102. Asco misappropriated Filtrex's trade secrets, within the meaning of Conn. Gen. Stat. § 35-51(b), by acquiring and disclosing without express or implied consent by Filtrex, at least Filtrex's confidential ACR technical and customer information beginning no later than December 2011, and by thereafter using and benefiting from that information, including through its design, marketing, and sales of the copycat RVM filter, use of Filtrex's trade secrets in competitive bids, and the use of Filtrex's trade secrets in attempting to poach Filtrex customers.

103. Defendants' misappropriation and unauthorized disclosure of Filtrex trade secrets has occurred in this District, at least through Asco's disclosure of Filtrex trade secrets to Mott, a Connecticut company, and through Defendants' offers for sale and sales of the RVM filter in this District.

104. At the time it acquired, used, and disclosed Filtrex's trade secrets, Asco knew or had reason to know that the information had been derived from or through former Filtrex employees

and agents—each of whom owed Filtrex a duty to maintain the confidentiality of, and not to use or disclose, Filtrex's trade secrets—and that the information had been acquired through improper means.

105. Defendants' misappropriation has at all times been willful and malicious.

106. Defendants acted in concert in the misappropriation alleged herein, and each Defendant is jointly and severally liable for the damages caused by that misappropriation.

107. As a direct and proximate result of Defendants' misappropriation, Filtrex has suffered, and continues to suffer, monetary damages in an amount to be determined at trial.

108. Filtrex is entitled to recover damages for its actual losses caused by Defendants' misappropriation and for any unjust enrichment caused by Defendants' misappropriation that is not taken into account in computing damages for actual loss.

109. Filtrex is entitled to a permanent injunction enjoining Defendants from any further actual or threatened misappropriation of Filtrex's trade secrets, including the continued purchase, marketing, sale, or use of the RVM filter and any product embodying Filtrex's misappropriated trade secrets, or if the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for the period of time the use could have been prohibited.

## THIRD CAUSE OF ACTION

(Violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, et seq. — Against all Defendants)

110. Filtrex re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

111. By engaging in the acts alleged above, Defendants have willfully and maliciously engaged in conduct offensive to public policy, governing statutes, including at least the Federal Defend Trade Secrets Act, common law principles, and established concepts of fairness.

112. Defendants' conduct was immoral, unethical, oppressive, and unscrupulous.

113. Defendants' unfair and deceptive acts include, in addition to and independently of their misappropriation of Filtrex's trade secrets: corrupting Filtrex's Korean agent by offering him a commission calculated on Filtrex's price; manipulating the bidding process for the 2023 [redacted] Project; disparaging Filtrex to [redacted] and other customers; and coordinating to exclude Filtrex from vendor approvals and competitive bids. Such conduct is unfair and deceptive, and actionable under CUTPA, independently of the trade-secret status of the information involved.

114. Defendants' conduct has caused and will continue to cause substantial injury to Filtrex and to the public interest.

115. Defendants committed such acts, and continue to commit such acts, in the conduct of trade or commerce, including through their sales and offers for sale of the copycat RVM filters in Connecticut.

116. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Filtrex has suffered an ascertainable loss of money and property.

117. Defendants' conduct was willful, wanton, and in reckless disregard of Filtrex's rights.

118. Defendants acted in concert in the conduct alleged herein, and each Defendant is jointly and severally liable for the resulting damages.

119. By virtue of the conduct alleged herein, Defendants have engaged in unfair competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Connecticut Unfair Trade Practice Act, Conn. Gen. Stat. § 42-110a, et seq.

**FOURTH CAUSE OF ACTION**

(Violation of Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, et esq – Against all Defendants)

120. Filtrex re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

121. Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation of section 1962."

122. Pursuant to 18 U.S.C. § 1962(c), RICO makes it "unlawful for any person employed by or associated with" a RICO "enterprise" "to conduct or participate … in the conduct of such enterprise's affairs through a pattern of racketeering activity." Pursuant to 18 U.S.C. § 1962(d), RICO makes it "unlawful for any person to conspire to violate … subsection … (c) of this section."

123. Mott and Asco's illegal scheme directed at Filtrex was conducted through a RICO enterprise and a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1832, 1962(c), and 1962(d).

124. Mott, Asco, and Fulvio Italo Menini, each a RICO person, form a RICO enterprise because they engage in interstate commerce and acted in concert with the common purpose of directing business away from Filtrex and to Mott and Asco, stealing Filtrex's trade secrets, and using misappropriated trade secret for Defendants' financial benefit and to the financial detriment of Filtrex; worked in close relationship with each other, leading to the eventual acquisition of Asco by Mott; and engaged in illegal acts at least from 2011 to 2023, which is a period with sufficient longevity to permit Defendants to pursue the purpose of their enterprise.

125. Pursuant to 18 U.S.C. §§ 1961(1) and (5), Mott, Asco, and Menini participated in the RICO enterprise through a "pattern of racketeering activity," including (1) continuous and

repeated misappropriation of Filtrex's trade secret technical and customer information from Asco through Asco's former and then-current employees and agents from 2011 to 2023; (2) systematic use of misappropriated Filtrex trade secrets to develop, manufacture, and market the copycat RVM filter; (3) coordinating to exclude Filtrex from vendor approvals and competitive bids, including by manipulating the bidding process for the 2023 [redacted] Project; and (4) disparaging Filtrex to [redacted] and other customers in at least 2022 and 2023. Each of the racketeering activities occurred since the enactment of RICO and within ten years of each other.

126. Filtrex has suffered and will continue to suffer financial injuries as a result of the pattern of racketeering activity by the enterprise formed by Mott and Asco and is entitled to relief pursuant to 18 U.S.C. §§ 1964(a) and (c), including threefold the damages Filtrex sustained and the cost of the suit, including reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**

(Unjust Enrichment – Against all Defendants)

127. Filtrex re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

128. Defendants have been, and continue to be, unjustly enriched as a result of their wrongful conduct alleged herein to the detriment of Filtrex.

129. Defendants have been unjustly enriched at least by selling the copycat RVM filter which was designed, manufactured and sold using misappropriated Filtrex trade secrets.

130. Defendants' enrichment was at the expense of Filtrex.

131. It would be unjust to allow Defendants to retain the benefit of their wrongful and unlawful conduct.

132. Filtrex is entitled to disgorgement and restitution of all wrongfully obtained gains received by Defendants as a result of their wrongful conduct alleged herein.

## SIXTH CAUSE OF ACTION

(Tortious Interference with Contract and Business Relations – Against all Defendants)

133. Filtrex re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

134. Filtrex has contractual and beneficial relationships with its customers and agents, including [redacted] and [redacted], as well as with prospective customers in bidding situations.

135. Defendants knew or should have known of Filtrex's contractual and beneficial relationships with its customers, including [redacted], as well as those with prospective customers in bidding situations.

136. Defendants knew or should have known of Filtrex's contractual and beneficial relationship with [redacted], including the written agency agreement dated [redacted]. Defendants knew or should have known that [redacted] was Filtrex's exclusive agent for the Republic of Korea and owed duties of confidentiality, non-competition, and protection against acts of unfair competition to Filtrex.

137. By and through their wrongful and unlawful conduct alleged herein, including their misappropriation of Filtrex trade secrets and their design, manufacturing, offer for sale, and sales of the copycat RVM filters, Defendants have intentionally interfered with the relationship between Filtrex and its customers, agents and prospective customers to advance Defendants' own economic interests to the detriment of Filtrex.

138. Filtrex has suffered actual losses as a result of Defendants' tortious conduct.

139. Defendants acted in concert in the tortious conduct alleged herein, and each Defendant is jointly and severally liable for the resulting damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. A preliminary injunction, and/or permanent injunction enjoining Defendants, and their officers, directors, employees, agents, subsidiaries, and all persons acting in concert with them, from any further actual or threatened misappropriation, use, or disclosure of Filtrex's trade secrets, including the manufacture, marketing, sale, offer for sale, and use of the RVM filter and any other product embodying Filtrex's misappropriated trade secrets, including the design and specification of Filtrex's ACR, ACW and ACB filters.

2. A preliminary injunction, and/or a permanent injunction restraining and enjoining Defendants from altering, destroying, or disposing of any evidence, in any form, relating to this action, including without limitation emails and paper and electronic documents, including current or archived electronic logs, metadata, and directories, as well as all data held on or accessible through Mott's Office 365 deployment, "mottcorp.com," and all audit, retention and purge logs relating thereto.

3. A preliminary injunction, and/or a permanent injunction ordering Defendants to return all Filtrex confidential and proprietary information in their possession.

4. Compensatory damages in an amount to be determined at trial, awarded against Defendants jointly and severally, including damages for Filtrex's actual losses and for Defendants' unjust enrichment pursuant to 18 U.S.C. § 1836(b)(3)(B), Conn. Gen. Stat. § 35-53(a), Conn. Gen. Stat. § 42-110g(a), 18 U.S.C. § 1964(c), and other applicable laws;

5. Punitive damages pursuant to 18 U.S.C. § 1836(b)(3)(C), Conn. Gen. Stat. § 35-53(b), Conn. Gen. Stat. § 42-110g(a), 18 U.S.C. § 1964(c), and other applicable laws;

6. Filtrex's reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(D), Conn. Gen. Stat. § 35-53(b), Conn. Gen. Stat. § 42-110g(d), 18 U.S.C. § 1964(c), and other applicable laws;

7. Pre-judgment and post-judgment interest as permitted by law; and

8. Such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues triable to a jury.

September 4, 2026

Respectfully submitted,

PLAINTIFF,
FILTREX S.r.l.,

/s/ Jonathan M. Shapiro
Jonathan M. Shapiro (ct24075)
**AETON LAW PARTNERS LLP**
311 Centerpoint Drive
Middletown, Connecticut 06475
Telephone: (860) 724-2160
jms@aetonlaw.com

Noah M. Leibowitz*
Anish Desai*
Tom Yu*
**Dechert LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
noah.leibowitz@dechert.com
anish.desai@dechert.com
tom.yu@dechert.com

* *Pro hac vice* motion forthcoming